UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| AMERICAN REALTY INVESTORS, INC.; TRANSCONTINENTAL REALTY INVESTORS, INC.; INCOME OPPORTUNITY REALTY INVESTORS, INC.; and PILLAR INCOME ASSET MANAGEMENT, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>PRIME INCOME ASSET MANAGEMENT, LLC; PRIME INCOME ASSET MANAGEMENT, INC.; and HOMETOWN 2006-1 1925 VALLEY VIEW, LLC,<br><br>Defendants. | Case No. 2:13-cv-00278-APG-CWH<br><br>ORDER GRANTING MOTION FOR LEAVE TO FILE SUPPLEMENTAL EVIDENCE AND DENYING MOTION TO REMAND |

This Order resolves Plaintiffs' motion to remand and motion for leave to file supplemental evidence in support of the motion to remand. (Dkt. Nos. 14, 42.)

I.     **BACKGROUND**

The origin of the instant case is a $2.45 million loan (the "Loan") that Hometown Commercial Capital, LLC (the "Original Lender") made to Transcontinental Brewery, Inc. (the "Borrower," a subsidiary of plaintiff Transcontinental Realty Investors, Inc.) in 2006 to finance

the purchase of real property in Farmers Branch, Texas (the "Property").[1] The Loan was secured by a Deed of Trust and a Guaranty Agreement (the "Guaranty"). Defendant Prime Income Asset Management LLC ("Prime LLC" or the "Guarantor") executed the Guaranty for Original Lender's benefit. Shortly thereafter, defendant Hometown 2006-1 1925 Valley View LLC ("Hometown LLC" or the "Noteholder") acquired the relevant interests in the Note, Deed of Trust, and Guaranty such that it became the holder of the Note and entitled to enforce the Guaranty.

In June and July of 2010, Borrower failed to make the required monthly payments. Hometown LLC then accelerated payment of the Note. Borrower apparently cured the defect by the end of August 2010 and then conveyed the Property to EQK Bridgeview Plaza, Inc. ("EQK") in September 2010, an action which constituted default under the Loan documents. Several days later, EQK filed for bankruptcy. After the bankruptcy court lifted the automatic stay as to the Property, Hometown LLC acquired the Property at a non-judicial foreclosure sale in July 2011 with a credit bid of $1.37 million.

On October 5, 2011, Hometown LLC brought suit in the U.S. District Court for the Northern District of Texas (the "Texas Court") to enforce the Guaranty against Prime LLC and collect the post-foreclosure deficiency. *Hometown 2006-1 1925 Valley View LLC v. Prime Income Asset Mgmt. LLC*, No. 3:11-cv-02633-O (N.D. Tex.) (the "Texas Guaranty Lawsuit"). In December 2012, the Texas Court granted partial summary judgment in Hometown LLC's favor, determining that Prime LLC is liable on the Guaranty and leaving the damages amount unresolved. Texas Guaranty Lawsuit, Dkt. No. 77.

Following the determination of liability, the parties met for court-ordered mediation on January 7, 2013. Hometown LLC alleges that on the morning of the mediation, it sent Prime LLC's counsel an e-mail attaching a draft complaint for alter ego liability against various alleged close affiliates of Prime LLC (the Plaintiffs in the instant case). Case No. 13-cv-01664-APG-

---

[1] These facts are taken primarily from the Texas Court's order granting partial summary judgment in the Texas Guaranty Lawsuit. Case No. 3-11-cv-02633-O (N.D. Tex.), Dkt. No. 77, Dec. 17, 2012.

PAL, Dkt. No. 19 at 13. The e-mail also allegedly stated that Hometown LLC intended to file the draft complaint if the Texas Guaranty Lawsuit could not be settled. *Id.* After several hours of mediation, according to Hometown LLC, the parties reached a draft settlement and agreed to return to the mediator's office on January 16 to execute the settlement documents. *Id.*

On January 9, 2013, however, the instant case was filed in Nevada state court by American Realty Investors, Inc. ("ARI"), Transcontinental Realty Investors, Inc. ("TRI"), Income Opportunity Realty Investors, Inc. ("IOR"), and Pillar Income Asset Management, Inc. ("Pillar") (collectively, the "Plaintiffs" or the "Public Entities") against Prime LLC, Prime Income Asset Management, Inc. ("Prime Inc.," the alleged sole member of Prime LLC), and Hometown LLC (collectively, the "Defendants"). (Dkt No. 1-1.) Plaintiffs seek a declaration that they are not alter egos of Prime LLC or Prime Inc. and that Plaintiffs are not alter egos of each other. *Id.*

On January 11, 2013, Prime LLC told Hometown LLC that Prime LLC was rejecting the settlement framework in the Texas Guaranty Lawsuit and refused to continue with mediation. *Id.* at 14.

On February 15, 2013, Hometown LLC filed a separate lawsuit in the Texas Court alleging fraudulent transfer, tortious interference with the Guaranty, conspiracy, alter ego, and injunctive relief against (i) the Plaintiffs in the instant case; (ii) Prime LLC; (iii) Prime Inc.; and (iv) the common officers and directors of the alleged Prime-affiliated entities. *Hometown 2006-1 Valley View LLC v. Prime Income Asset Mgmt., et al.*, No. 3:13-cv-00747-O (N.D. Tex.) (the "Texas Fraud Lawsuit"). The crux of the allegations is that Prime LLC stripped itself of its entire revenue stream to avoid paying on the Guaranty by assigning to Pillar the beneficial interests in various "advisory agreements" that Prime LLC held with ARI, TRI, and IOR. In other words, Prime LLC diverted the revenue stream from itself to Pillar. Hometown LLC argues that these entities are alter egos of Prime LLC and thus, regardless of how the revenue was shifted, they are liable for Prime LLC's obligation on the Guaranty.

On February 20, 2013, Hometown LLC removed the instant case from the Nevada state court to this Court. (Dkt. No. 1.) Hometown asserts diversity jurisdiction because (i) it is a

3

citizen of Ohio and all Plaintiffs are citizens of Nevada and Texas; (ii) the Prime Defendants were fraudulently joined and should thus be disregarded to determine diversity of citizenship; and (iii) the amount in controversy is in excess of the $75,000 threshold. (*Id.*)

On February 25, 2013, in the Texas Guaranty Lawsuit, Hometown LLC and Prime LLC stipulated that Hometown LLC suffered $1,469,698.05 in actual damages as a result of Prime LLC's breach of the Guaranty. Texas Guaranty Lawsuit, Dkt. No. 101. The Texas Court is yet to approve this stipulation.

On February 27, 2013, Hometown LLC moved to dismiss the instant case under Rule 12(b)(2) for failure to establish that it is subject to personal jurisdiction in Nevada and under Rule 12(b)(6) for failure to state a claim. (Dkt. No. 4.)

On March 22, 2013, Plaintiffs moved to remand to state court. (Dkt. No. 14.) Prime LLC and Prime Inc. (the "Prime Defendants") joined the Plaintiffs' motion. (Dkt. No. 15.) Primarily, Plaintiffs contend that Hometown LLC failed to meet its burden of showing diversity jurisdiction because (i) they and the Prime Defendants share citizenship in Nevada and Texas, thereby defeating diversity; (ii) Hometown LLC failed to provide tangible evidence in the Notice of Removal to prove that U.S. Bank National Association ("U.S. Bank") is the sole member of Hometown LLC; and (iii) Hometown LLC cannot establish fraudulent joinder because Nevada law applies to the issue of alter ego liability and Nevada law is unclear about whether an LLC is subject to alter ego liability.

Hometown LLC responds that diversity of citizenship exists because (i) the Prime Defendants were fraudulently joined to defeat diversity jurisdiction; and (ii) Hometown LLC's sole member is US Bank, a citizen of Ohio. (Dkt. No. 17.) Hometown alternatively requests that the Court realign the parties such that the Prime Defendants become plaintiffs. (*Id.* at 11.)

On September 11, 2013, the Texas Court granted the Public Entities' motion to transfer venue of the Texas Fraud Lawsuit to this Court under the "first-to-file rule."[2] Texas Fraud

---

[2] The first-to-file rule gives federal district courts discretion—in the interests of comity, efficiency, and judicial economy—to transfer, stay, or dismiss an action in favor of a previously-filed, substantially similar action in a different district. *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997).

4

Lawsuit, Dkt. No. 27. The Texas Fraud Lawsuit was then assigned case number 2:13-cv-01664-APG-PAL (still referred to herein as the "Texas Fraud Lawsuit"). On September 13, 2013, Plaintiffs filed an emergency motion to consolidate the instant case with the Texas Fraud Lawsuit.[3] The same day, Plaintiffs also moved for leave to file supplemental evidence in support of their motion to remand. (Dkt. No. 42.) Plaintiffs seek to file two documents from the Texas Fraud Lawsuit: the original complaint and the order transferring the case to this Court. On September 20, the Court held a hearing on the motion to remand and took the matter under submission. (Dkt. No. 44.)

Although various motions are pending, this Order resolves only Plaintiffs' motion for leave to file supplemental evidence (Dkt. No. 42) and motion to remand (Dkt. No. 14). The Court GRANTS the former[4] and DENIES the latter.

## II. ANALYSIS

### A. Remand / Diversity Jurisdiction

28 U.S.C. § 1441 governs the removal of civil actions from state to federal court. The statute is strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* The defendant must prove that removal was proper by clear and convincing evidence. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

Diversity jurisdiction requires that all plaintiffs be "citizens of different states" from all defendants (i.e., "complete diversity") and that the amount in controversy exceed $75,000. 28

---

[3] The Court has determined that the consolidation matter does not qualify as an "emergency" under Local Rule 7-5(d). The Court will rule on that motion, if necessary, once briefing is complete.

[4] FED. R. EVID. 201(b); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record." (internal quotation marks and citation omitted)).

1 U.S.C. § 1332(a)–(b). An action may not be removed on the basis of diversity jurisdiction,
2 however, if "any of the parties properly joined and served as defendants is a citizen of the State in
3 which such action is brought." 28 U.S.C. § 1441(b)(2). Fraudulently joined defendants do not
4 defeat diversity under § 1441(b)(2). *Morris v. Nuzzo*, 718 F.3d 660, 674 (7th Cir. 2013); *see also*
5 *Fed. Nat'l Mortg. Ass'n v. Oner*, 2013 WL 1248322 at *1 (D. Nev. 2013).

6 "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence is
7 ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action
8 against a resident defendant, and the failure is obvious according to the settled rules of the state."
9 *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (internal quotation marks
10 and citation omitted). There is a presumption against finding fraudulent joinder. *See Plute v.*
11 *Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). To overcome this
12 presumption, Hometown must show there is no possibility that Plaintiffs might prevail against the
13 Prime Defendants under settled Nevada law. *See id.* "In borderline situations, where it is
14 doubtful whether the complaint states a cause of action against the resident defendant, the doubt
15 is ordinarily resolved in favor of the retention of the cause in state court." *Albi v. St. & Smith*
16 *Publ'n*, 140 F.2d 310, 312 (9th Cir. 1944); *see Morris*, 236 F.3d at 1067. "Accordingly, if the
17 facts alleged in the [C]omplaint, taken as true and drawing all inferences in [Plaintiffs'] favor, can
18 possibly state a claim under [Nevada] law against [the Prime Defendants] … , there is no
19 fraudulent joinder and [the] case must be remanded to state court." *Ballesteros v. Am. Standard*
20 *Ins. Co. of Wis.*, 436 F. Supp. 2d 1070, 1072 (D. Ariz. 2006).

21 The Court must first determine each party's state of citizenship. If complete diversity is
22 lacking, the Court must then determine whether any of the defendants that destroys diversity was
23 fraudulently joined. To do this, the Court assesses each properly pled cause of action separately.

24 **B.    States of Citizenship**

25 For the purposes of diversity jurisdiction, a corporation is a citizen of two states: where it
26 was incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1). LLCs
27 are treated like partnerships rather than corporations in that "an LLC is a citizen of every state of
28

1  which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d
2  894, 899 (9th Cir. 2006). "A trust has the citizenship of its trustee or trustees." *Id.* A national
3  banking association is a citizen of the state in which its main office, as designated in its articles of
4  association, is located. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006). If a party's
5  citizenship is unknown or insufficiently demonstrated by the removing party, complete diversity
6  is not established because there is always the possibility that that party is a citizen of the same
7  state as one of the plaintiffs. *See Cowan v. Central Reserve Life of N. Am. Ins. Co.*, 703 F. Supp.
8  64, 64 (D. Nev. 1989).

### 1.  Plaintiffs

Hometown and Plaintiffs agree that Plaintiffs were incorporated in Nevada and have their principal place of business in Texas, and thus are citizens of both states. (Dkt. No. 1 ¶¶ 10–13; Dkt. No. 14 at 5.)

### 2.  Defendants

Hometown LLC alleges that Prime LLC's sole member is Prime Inc. and that Prime Inc. is a Nevada corporation with its principal place of business in Texas. (Dkt. No. 1 ¶ 15.) Plaintiffs argue that Hometown LLC has not sufficiently demonstrated with tangible evidence that Prime Inc. is Prime LLC's sole member. (Dkt. No. 14 at 5.) Hometown LLC has not directly responded to this argument, but rather contends that the Prime Defendants' citizenship should be ignored because both are sham defendants.

Hometown LLC asserts that the relevant entity to determine its own citizenship is U.S. Bank, as successor trustee for the trust that is Hometown's sole member. (Dkt. No. 1 ¶ 14; Dkt. No. 17 at 4.) Hometown LLC further asserts that U.S. Bank is a citizen of Ohio because its main office is in Cincinnati, Ohio. Plaintiffs challenge the evidence Hometown LLC offered to connect itself to US Bank. In response, Hometown LLC filed additional documents to support its assertion, including an affidavit jointly executed by two vice presidents of U.S. Bank and Bank of America N.A. ("BofA") attesting that U.S. Bank succeeded BofA as successor trustee for a portfolio of mortgage trusts including the Hometown Commercial Trust 2006-1 Certificates of

Beneficial Ownership, Series 2006-1. (Dkt. 17-12 at 2–8.) Hometown LLC argues that this trust is the sole member of Hometown LLC, an assertion which Plaintiffs have not contested.

Plaintiffs' challenge to the sufficiency of Hometown LLC's evidence is rooted in an apparent misunderstanding of the law. Plaintiffs contend that Hometown LLC "merely asserted that its sole member is U.S. Bank" in the Notice of Removal and that this assertion, along with U.S. Bank's articles of association (attached to the Notice of Removal), were insufficient to establish Hometown LLC's citizenship. (Dkt. No. 14 at 5–6.) Plaintiffs argue that something more was required to establish the relationship between Hometown LLC and U.S. Bank. The law does not impose such a high bar at the removal stage. In the notice of removal, "defendants [are] merely required to allege (not to prove) diversity[.]" *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). If a plaintiff challenges the removing defendant's allegations of the parties' citizenship, the defendant may respond with additional evidence. *See White v. Terminix Int'l*, 2006 WL 1465009 at *1 (N.D. Cal. 2006).

Hometown LLC sufficiently alleged its Ohio citizenship in the Notice of Removal. These allegations, combined with the supporting documents filed with the Notice of Removal and the response brief, are sufficient to establish that U.S. Bank is the relevant entity to determine Hometown LLC's state of citizenship. U.S. Bank's main office is in Cincinnati, Ohio, thus making it a citizen of Ohio. (Dkt. No. 1-5 at 2.)

In sum, Plaintiffs are citizens of Nevada and Texas. For the purposes of this Order, the Court treats the Prime Defendants as citizens of Nevada and Texas because even if Hometown LLC is incorrect in so asserting, the Court must presume that the Prime Defendants share citizenship with Plaintiffs. Hometown LLC is a citizen of Ohio. Diversity of citizenship exists only between Plaintiffs and Hometown LLC. Consequently, the instant case must be remanded unless the Prime Defendants were fraudulently joined.

### C.  First Amended Complaint

To determine which causes of action necessitate a fraudulent joinder analysis, the Court must first determine whether the FAC was timely filed. Under Rule 15(a)(1),

A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

"A complaint is a pleading to which a responsive pleading is required." *Villery v. Dist. of Columbia*, 277 F.R.D. 218, 219 (D.D.C. 2011). "Therefore, under Rule 15(a)(1)(B), a party has an absolute right to amend its complaint at any time from the moment the complaint is filed until 21 days after the earlier of the filing of a responsive pleading or a motion under Rule 12(b), (e), or (f)." *Id.* In cases involving multiple defendants, the 21-day deadline operates only as to those defendants that have filed a responsive pleading or eligible motion under Rule 12. *See id.* ("If there is more than one defendant, and not all have served responsive pleadings, the plaintiff may amend the complaint as a matter of course with regard to those defendants that have yet to answer." (internal quotation marks and citation omitted)); *Hylton v. Anytime Towing*, 2012 WL 1019829 at *2 (S.D. Cal. 2012). In other words, a plaintiff may amend the complaint "as a matter of course" at any time as to a defendant who has not filed a responsive pleading or eligible motion under Rule 12.

Hometown LLC filed a motion to dismiss under Rule 12(b) in February 2013. Accordingly, any new causes of action or factual allegations against Hometown LLC in the FAC are untimely. Plaintiffs plead in the FAC that the justiciable controversy for the Second Cause of Action (declaratory relief for the termination of the advisory agreements) is between Plaintiffs and Hometown. As such, the Court dismisses the Second Cause of Action in the FAC as untimely under Rule 15(a)(1)(B).

The Prime Defendants, on the other hand, have not filed a responsive pleading or any Rule 12 motions. Thus, any new causes of action or allegations in the FAC against the Prime Defendants are timely. Because the FAC's Third and Fourth Causes of Action (contribution and indemnification, respectively) concern a controversy among Plaintiffs and the Prime Defendants, those two claims are timely.

By operation of Rule 15(a)(1)(B) then, the operative causes of action in the FAC are the First (alter ego liability), Third (contribution), and Fourth (indemnification). The next step is to determine if these are viable causes of action under settled Nevada law; if not, then the Prime Defendants were fraudulently joined as sham defendants.

### D.  Fraudulent Joinder

Although this Court determines whether to grant declaratory relief on the merits of a case under the federal Declaratory Judgment Act (28 U.S.C. § 2201), the narrower issue of whether Plaintiffs have a possible claim under Nevada law—the relevant question for the fraudulent joinder analysis—is governed by the Nevada Declaratory Judgment Act (NEV. REV. STAT. §§ 30.010–30.170). *Coastal Const. Co., Inc. v. N. Am. Specialty Ins. Co.*, 2010 WL 2816694 at *4–5 (D. Haw. 2010) (assessing viability of declaratory judgment claim under Hawai'i law rather than the federal Declaratory Judgment Act); *Grennell v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 390, 397 n.9 (S.D.W.V. 2004) (applying state procedural law in fraudulent joinder analysis). The Nevada Declaratory Judgment Act provides:

> Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

NEV. REV. STAT. § 30.030.

However, "a justiciable controversy [is] a preliminary hurdle to an award of declaratory relief." *Doe v. Bryan*, 728 P.2d 443, 444 (Nev. 1986). "Nevada has a long history of requiring an actual justiciable controversy as a predicate to judicial relief. Moreover, litigated matters must present an existing controversy, not merely the prospect of a future problem." *Id.* The Nevada Supreme Court has articulated the following definition of justiciable controversy:

> "(1) there must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectable interest; and (4) the issue involved in the controversy must be ripe for judicial determination."

*Id.* (quoting *Kress v. Corey*, 189 P.2d 352, 364 (Nev. 1948)). If there is no justiciable controversy, then the precise contours of the Nevada Declaratory Judgment Act are irrelevant.

Regarding the fourth element, "[t]he factors to be weighed in deciding whether a case is ripe for judicial review include: (1) the hardship to the parties of withholding judicial review, and (2) the suitability of the issues for review." *Herbst Gaming v. Heller*, 141 P.3d 1224, 1231 (Nev. 2006) (internal quotation marks and citation omitted). Federal courts look to the same two factors to determine the ripeness of an issue.[5] *Ass'n of Am. Medical Colleges v. U.S.*, 217 F.3d 770, 779–80 (9th Cir. 2000). Issues are generally considered to be suitable for review if they are questions of law that do not depend on additional factual development. *See id.* at 780; *T.R. v. State of Nevada (In re T.R.)*, 80 P.3d 1276, 1280 (Nev. 2003).

> A primary focus in such [ripeness] cases has been the degree to which the harm alleged by the party seeking review is sufficiently concrete, rather than remote or hypothetical, to yield a justiciable controversy. Alleged harm that is speculative or hypothetical is insufficient: an existing controversy must be present. While harm need not already have been suffered, it must be probable for the issue to be ripe for judicial review.

*Herbst Gaming*, 141 P.3d at 1231 (internal quotation marks and citation omitted).

### 1. First Cause of Action (Declaratory Relief for Alter Ego "Non-Liability")

Plaintiffs claim that they are *not* alter egos of the Prime Defendants. The Prime Defendants freely admitted at the motion hearing that they desire the same outcome: a declaration that Plaintiffs and the Prime Defendants are *not* alter egos. The Prime Defendants have no interest in contesting the alter ego claim (or non-claim, as it were). As such, there is no "actual justiciable controversy" among Plaintiffs and the Prime Defendants as to alter ego liability under

---

[5] Although the Nevada Declaratory Judgment Act and the federal Declaratory Judgment Act are not coextensive on all issues, the Court sees no distinction between them for the purpose of determining whether the instant claims present justiciable controversies that are ripe for judicial review. The Court thus looks to federal case law to assist in the ripeness inquiry.

11

Nevada law because their interest are not adverse on that issue. *Doe v. Bryan*, 728 P.2d at 444.[6]

Consequently, the Prime Defendants were fraudulently joined as to this cause of action.

### 2. Third and Fourth Causes of Action (Contribution and Indemnification)

This Court is unaware of any Nevada Supreme Court cases that are squarely on point with the facts of the instant case. In a somewhat analogous context, however, the Nevada Supreme Court held that an alleged tort victim's claim against the tortfeasor's insurer to determine the scope of insurance coverage was not ripe for determination if brought before obtaining a judgment for primary liability against the tortfeasor. *Knittle v. Progressive Ins. Co.*, 908 P.2d 724, 724 (Nev. 1996). The Nevada Supreme Court was wary of putting the trial court in the position of "trying to guess what facts might be determined in a trial on the tort claim, and then [] apply[ing] those hypothetical facts to the insurance policies." *Id.* at 726 (internal quotation marks and citation omitted).

Federal courts have taken a similar stance, and one crucial factor is whether the contribution/indemnification claims are brought in the same action as the primary liability claims. *See Hecht v. Summerlin Life & Health Ins. Co.*, 536 F. Supp. 2d 1236, 1240–41 (D. Nev. 2008) (citing *Urological Surgery Prof'l Ass'n v. Fecteau Benefits Group, Inc.*, 359 F. Supp. 2d 24, 25–26 (D.N.H. 2005) (holding contribution/indemnification claims not ripe where raised in separate action than primary liability, albeit in the same court)). *Hecht* held that third-party claims for contribution and indemnification were ripe for adjudication because they were asserted in the same action in which primary liability was being litigated. "The costs and pitfalls associated with litigating multiple suits on the same subject matter, and the attendant possibility of inconsistent verdicts, are not insubstantial or abstract." *Id.* at 1241. The inefficiency and risk of conflicting judgments posed a real risk of hardship to the parties. *See id.*

---

[6] Because the Court bases the decision of this issue on the settled law of Nevada about justiciable controversies, the Court need not examine the novel, unsettled issue of whether an LLC is subject to alter ego liability in Nevada. In other words, regardless of the state of the law in Nevada as to alter ego liability and LLCs, the Prime Defendants were fraudulently joined as to the alter ego claim because there is no actual controversy among them and Plaintiffs.

12

In the present case, Plaintiffs will suffer no hardship if the contribution and indemnification claims are not resolved in the instant case. The Court sees no difficulty raising these same issues in the Texas Fraud Lawsuit, whether litigated here or in Texas. The Court also is concerned that facts may develop in the Texas Fraud Lawsuit that are relevant to the determinations of contribution and indemnification in this case. Although contribution and indemnification largely turn on the contractual relationships between the relevant parties, the parties' behavior could have modified existing contracts and/or formed new contracts. *See Bally's Grand Employees' Fed. Credit Union v. Wallen*, 779 P.2d 956, 957 (Nev. 1989) (discussing implied-in-fact contracts). The Court declines to operate in something of a factual vacuum to determine contribution and indemnification in the instant case at this time.

Moreover, the existence of the pending Texas Fraud Lawsuit makes the harm at issue (potential primary liability from Plaintiffs to Hometown as alter egos of the Prime Defendants) possible but not *probable*. *See Herbst Gaming*, 141 P.3d at 1231. Just because a lawsuit has been filed does not make it more likely than not that the relief sought will be granted. For these reasons, Plaintiffs have failed to state causes of action against the Prime Defendants for contribution and indemnification, and that failure is obvious according to the settled ripeness rules of Nevada. *See Morris*, 236 F.3d at 1067. The Prime Defendants were fraudulently joined as to those causes of action. *See id.*

In sum, the Prime Defendants were fraudulently joined as to the First, Third, and Fourth Causes of Action in the FAC. The Court thus disregards the Prime Defendants' citizenship for purposes of diversity jurisdiction.[7] The only remaining cause of action is the alter ego claim as against Hometown. There is complete diversity of citizenship between Plaintiffs and Hometown and the amount in controversy exceeds the statutory minimum. Thus the Court has diversity jurisdiction over the instant case. Hometown has met its burden to prove by clear and convincing evidence that removal was proper. Consequently, the Court denies the motion to remand.

---

[7] Similarly, the Court disregards Hometown LLC's failure to obtain the Prime Defendants' consent to removal because the consent of a sham defendant is unnecessary. *Simpson v. Union Pac. R.R. Co.*, 282 F. Supp. 2d 1151, 1157 (N.D. Cal. 2003).

### E. Realignment of Parties

The Court presently does not have enough information to determine if realigning the Prime Defendants as plaintiffs is warranted. The Prime Defendants' respective states of citizenship have not been sufficiently established to assess whether realignment would destroy diversity. In the concurrent order to show cause, the Court requests additional briefing on this issue.

## III. CONCLUSION

For the reasons set forth above, the Court hereby ORDERS:

1. Plaintiffs' motion for leave to file supplemental evidence (Dkt. No. 42) is GRANTED.
2. Plaintiffs' motion to remand (Dkt. No. 14) is DENIED.
3. The FAC's Second Cause of Action is DISMISSED as untimely under Rule 15(a)(1)(B).

DATED this 15th day of October, 2013.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE